### CLARK *v*. RIDEOUT.

Where a party who had a mortgage of a pair of steers took possession of
them, under a claim that he was the absolute owner of them by virtue
of a sale from the mortgagor, and converted them to his own use, deny-
ing then, and upon the stand at the time of the trial, that he held or
claimed them by virtue of the mortgage—*Held,* that trover could be
maintained against him, notwithstanding such mortgage, if the jury
found there was no sale.

TROVER, for a pair of steers. The plaintiff admitted
that some time prior to 1856 he gave a mortgage of the
steers in controversy to the defendant, to secure a note
which he held against the plaintiff. The steers remained
in the plaintiff's possession until the spring of 1856, when
he engaged the defendant to pasture the steers for him
during that season; and in June, 1856, the defendant,
under this arrangement, drove them to pasture. In No-
vember, 1856, the plaintiff demanded the steers of the
defendant, at his barn, where the steers then were, and
the defendant refused to deliver them, assigning as the
reason that he had bought the steers of the plaintiff and
paid him for them. In the winter of 1856–7 the defend-
ant killed the steers and used the meat. The note held
by the defendant against the plaintiff, secured by the
mortgage, was not paid till after the steers were killed,
and was then paid in full.

The plaintiff rested his case, and the defendant moved
for a nonsuit, which the court overruled, and he excepted.

The defendant then testified that in the spring of 1856
he purchased the steers of the plaintiff, and paid him the
money for them, stating the sum paid, and where, and
that he took the steers under this purchase and drove
them to pasture in June, 1856; and that when the plain-
tiff demanded them of him, in November following, he
refused to give them up, upon the ground that he had

Clark v. Rideout.

thus purchased them and paid for them. He testified that he never took possession of said steers by virtue of any mortgage, or held, or claimed to hold, them under or by virtue of a mortgage ; that no part of the avails or value of said steers was ever applied on his mortgage note, but the whole of it was paid by the plaintiff. He did not produce or prove the said mortgage, nor offer any evidence as to its terms, or conditions, or anything in relation to it, nor set up any defence or justification under it. There was much conflicting testimony in regard to the sale of the steers by the plaintiff to the defendant.

The defendant requested the court to instruct the jury that if the defendant, at the time of the demand on him for the steers, held a valid mortgage of said steers, trover would not lie for them, though he claimed them under a purchase. The court declined, and directed the jury that upon the facts in evidence they might lay the mortgage out of the case, and only inquire whether the defendant purchased the steers, or took them by agreement to pasture, and return their verdict as they should find that fact. A bill of exceptions was allowed by the court.

*Lull*, for the plaintiff.

The general property in a mortgaged chattel immediately vests, by virtue of the mortgage, in the mortgagee, and without an agreement to the contrary the right of immediate possession follows the general property. But as the mortgager has an interest in the property, he may rightfully retain possession of the mortgaged chattel, if there be no agreement between him and the mortgagee in reference to its possession, and may subject it to ordinary wear, but not consumption, and sell his interest in the chattel, and transfer its rightful possession to the purchaser ; and this as against the mortgagee. 12 N. H. 385. The mortgagee may at any time interfere, and assert his rights of property and possession under his mortgage. If he sees

fit to permit his rights under his mortgage to lie dormant, and to claim the mortgaged chattel by a defective title, and to appropriate it to himself under such title, then will he be a wrong doer, as much as if he held no mortgage, and then may the mortgagor maintain trover to vindicate his right of possession and qualified property. This the plaintiff conceives to be the law, when there is no agreement between the mortgagee and mortgagor as to the possession of the chattel, and thinks 12 N. H. 384, and 34 N. H. 568, although not entirely in point, to indicate this view to be correct. Where there is an agreement that the mortgagor shall retain possession for a particular time, or till the happening of a particular event, this creates for the mortgagor a *special* property in the chattel, and the right of immediate possession, and suspends the right of possession that would otherwise exist in the mortgagee. 34 N. H. 571. Such an interest is sufficient to enable the mortgagor to maintain trover against the mortgagee. 2 Gr. Ev., sec. 637; 2 Saund. Pl. and Ev. 877, 879; 1 Ch. Pl. 148. The jury, under the instructions of the court, find that the defendant agreed to pasture the steers for the plaintiff for the season, and took and drove them away under that agreement. This was, in effect, an agreement that these steers should remain in the possession of the plaintiff during the season. The defendant took the steers, drove them away, and afterwards killed them under a false claim of a title by purchase. The taking, driving away, pasturing and killing, under a claim of title by purchase, was a violation of a special property and right of possession by the plaintiff, by virtue of the agreement between the plaintiff and defendant, that the defendant would pasture the steers during the season, as his property, and for him, and trover is the proper form of action to right the wrong, and the nonsuit was properly refused.

*W. W. Bailey*, for the defendant.

Clark *v.* Rideout.

BELL, C. J. The question is, if the plaintiff can maintain trover upon the facts in evidence? The destruction of the steers is a wrong, for which the defendant ought in some form to be accountable, but it does not follow that he can maintain this action.

If it appeared that the defendant had a mortgage of these animals, and had taken possession of the steers in the exercise of his rights as mortgagee, and claimed to hold them under his mortgage, the plaintiff could not maintain this action; because, though he has a special right of property, he had no right to the present possession.

Though a mortgagee has the general right to take actual possession of the mortgaged property at his pleasure, yet this right may be modified or controlled by the agreement of the parties; and the plaintiff here claims that, by the agreement of the defendant to pasture the steers for the season for the plaintiff, he in effect agreed that he would take the steers, not as mortgagee, but as a bailee of the plaintiff; in other words, he would hold possession, not for himself, but for the plaintiff as his agent. The court see no objection to such an arrangement, nor reason why the jury might not have properly regarded that as a just view of the case, upon the proof. The evidence tended strongly to show that this was the actual condition of the claims and rights of the parties. The defendant was himself a witness, and testified that in the spring of 1856, the season of the pasturing, he purchased the steers of the plaintiff and paid him the money for them, and that he took the steers under this purchase, and drove them to his pasture in June, 1856, and that he did not take them under or by virtue of any mortgage. The jury, then, if they disbelieved the evidence of a sale, might well have concluded that the defendant took and held the possession, not as mortgagee, but as a bailee of the plaintiff, and as his agent, and by his agreement he had waived his right to take possession as mortgagee.

Clark *v.* Rideout.

If, however, the jury should have found that an agreement to pasture the steers might be consistent with the defendant's right to take possession under his mortgage, still the instruction of the court was correct, that the jury might lay out of the case the mortgage, and consider only the other points of the case. The plaintiff admitted he had made to the defendant a mortgage of these steers, and nothing further appeared in relation to it. The defendant set up no title under any mortgage, he produced none, he offered no legitimate evidence of the existence of any; and he denied, in strong terms, that he took possession, or held the property by any other right than that of owner. This claim was, in its nature, entirely inconsistent with any right as mortgagee. If, having a limited right as mortgagee, a person make an absolute purchase, his mortgage interest at once ceases, being merged in the title of the owner. By insisting upon his title as a purchaser and absolute owner, the defendant, in effect, denied the existence and validity of a mortgage, as much as if he had in terms denied it. And the jury were warranted in laying it out of the case, as not being set up or proved in the case, and as, on the contrary, being effectually disproved by the party who alone had any right to insist upon it. The plaintiff would then stand in the position of general owner, with a right to the present possession, if the defendant failed to establish his title by purchase. The interest of a bailee is, in general, divested by his destruction of the property; and it may well be doubted if a bailee for pasturing has any right to insist upon retaining possession against the general owner. Cross on Lien 25.

The motion for a nonsuit was waived by proceeding in the trial.

*Judgment on the verdict.*